Wanamaker, J.
The single question involved in this case is the jurisdiction of the Court of Appeals to hear and determine on “appeal” the disbarment proceedings against G-eorge S. Hawke, theretofore heard and determined in the court of common pleas of Hamilton county.
The petition in error in this court is brief, and so far as pertinent reads:
“This petitioner avers that there is error in said record and proceedings in this, to-wit:
“ (1) The Court of Appeals erred in finding that it had no jurisdiction to hear and determine the cause presented by the appeal of this petitioner.
“(2) The Court of Appeals erred in sustaining the motion of the committee appointed by the court to prosecute disbarment charges against George S. Hawke, being the motion to strike the cause from the docket because of lack of jurisdiction of the subject-matter of the disbarment proceedings on appeal.
“(3) The Court of Appeals erred in denying to George S. Hawke the right given by Article IV, Section '6 of the Constitution as amended September 3, *343 .1912, to have the judgment of the court of common pleas reviewed in and by said Court of Appeals on the appeal filed by him in said cause.”
It will be observed that the plaintiff in error, George S. Hawke, recognizes and admits the order and finding of the court of common pleas of Hamilton county to be a judgment of the court of common pleas, wherein he complains:
“The Court of Appeals erred in denying to said George S. Hawke the right * * * to have the judgment of the court of common pleas reviewed in and by said Court of Appeals on the appeal filed by him in said cause.”
That the order and finding of the court of common pleas constitute a judgment of the court of common pleas further appears in the transcript of the docket and journal entries of the court of common pleas, set forth in the record as follows :
“Judgment suspending Geo. S. Hawke from office as attorney at law. Geo. S. Hawke excepts, and gives notice of appeal. Appeal bond fixed at $100.” Further, this appears in the journal entry:
“Wherefore, it is ordered, adjudged, and decreed by the court that the said George S. Hawke be now, and he hereby is, suspended from his said office as attorney in law, in all the courts of the state of Ohio until such time as- he shall be reinstated in accordance with law.”
It further appears in said record and transcript: “It is further ordered that the clerk of this court prepare a certified copy of this judgment and forward same to the clerk of the Supreme Court.”
This court has had before it upon numerous occasions the question of the right of appeal to the Court *344 of Appeals. One of the earliest cases is tnat of Wagner v. Armstrong, 93 Ohio St., 443, 113 N. E., 397, decided in 1916. The first paragraph of the syllabus of that case reads:
“1. Section 12224, General Code, purporting to vest the Courts of Appeals with jurisdiction in the trial of cases on appeal, is unconstitutional and void. The jurisdiction of the Courts of Appeals in the trial of cases on appeal is expressly limited by the Constitution to chancery cases, and this jurisdiction cannot be enlarged by the General Assembly.”
This would seem a clear and conclusive declaration of the law upon the principle here involved— that is, that Courts of Appeals receive their jurisdiction exclusively from the Constitution, and that therefore the General Assembly is wholly without power to add to or subtract from that jurisdiction.
Appellate jurisdiction in a popular sense includes both proceedings on appeal, as technically known, and proceedings in error. The language of the Constitution so far as pertinent reads:
Section 6, Article IV: “The Courts of Appeals shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procedendo, and appellate jurisdiction in the trial of chancery cases, and to review, affirm, modify or reverse the judgments of the courts of common pleas, superior courts and other courts of record,” etc.
Now it is admitted on all hands that the italicized part of this section, “and appellate jurisdiction in the trial of chancery cases,” refers to a trial de novo of a cause that had been theretofore tried in the court of common pleas, and that all that follows the italicized portion relates entirely to proceedings in error, *345 which in their nature are necessarily, in a general sense, included within the term appellate jurisdiction, but which are not technically appeals as that word is known in our procedure of law in Ohio. It is admitted that Hawke might have proceeded to the Court of Appeals by a petition in error, within the statutory time. Did he, in addition thereto, have the right to prosecute appeal in the Court of Appeals?
Hawke relies upon Section 1709, General Code, which reads:
“In case of suspension or removal of an attorney at law by the common pleas court, an appeal may be had to the Court of Appeals, and the sentence of either the common pleas court or the Court of Appeals, may be reviewed on error in the Supreme Court. If such suspended or removed attorney at law shall desire a modification of the decree of suspension or removal, he shall file a written motion therefore [therefor] in the court which entered such decree.”
This section (1709) is- a part of a blanket act assembling certain old statutes or sections of statutes and a few new sections passed in April, 1913, under the new Constitution of 1912, and is to be found in 103 Ohio Laws, at page 405.
In the Wagner case, supra, the particular section involved was 12224, General Code, which was a portion of that same act of April, 1913, and the Wagner case held that that section was void so far as it attempted to confer jurisdiction on the Court of Appeals other than what had been conferred in the Constitution. If the Wagner case was rightly decided, and it was decided by a unanimous court, then any other statute or section of a statute that undertakes *346 to confer jurisdiction on the Court of Appeals other than that conferred in the Constitution must for an equally sound reason be void.
The principle involved in the Wagner case was considered in a prior case, Cincinnati Polyclinic v. Balch, 92 Ohio St., 415, 111 N. E., 159. The syllabus of that case reads:
“1. Section 6, Article IY of the Constitution of Ohio as amended September 3, 1912, confers jurisdiction upon the Courts of Appeals to review, affirm, modify or reverse the judgments of the court of common pleas, superior courts, and other courts of record within the district. The general assembly has no power to enlarge or limit the jurisdiction conferred by the Constitution of the state, but may provide by law for the method of exercising that jurisdiction.
“2. Section 26 of the act of April 17, 1913 (103 O. L., 279), as amended February 6,1914 (104 O. L., 187), in so far as it purports to limit the appellate jurisdiction of the Court of Appeals to review, affirm, modify or reverse the judgment of the courts of common pleas within its district, is unconstitutional and void.”
The principle or doctrine announced in the Polyclinic case was concurred in by all the judges save and except Chief Justice Nichols, who dissented from the judgment, and prepared a dissenting opinion. Later on, when the Wagner case was considered, Chief Justice Nichols, no doubt deeming it wise to have unanimity of decision and a clear pronouncement upon as important a subject as the jurisdiction of the Court of Appeals, concurred with the other members of this court, and wrote the opinion in the Wagner case, which, if there be any vigor *347 or virtue in the doctrine of stare decisis, upon principle and authority, should be followed by this court until the people themselves, who made the constitutional grant, shall see fit to change such constitutional grant.
The principle upon which these two cases, Polyclinic and Wagner, were predicated, was simply this: What is expressly delegated or granted in a Constitution cannot thereafter be expressly or impliedly denied or qualified by statute; neither may it be increased nor decreased by statute; if so, the statute becomes at once paramount to the Constitution. Were it otherwise constitutional law could be, at the pleasure of the G-eneral Assembly, absolutely nullified by the enactment of any contrary, conflicting, or amendatory statute.
This same doctrine as to constitutional expression necessitating statutory exclusion has been likewise held and applied by this court in Fulton, Secy. of State, v. Smith, 99 Ohio St., 230, 124 N. E., 188, where this court unanimously held, in substance, that, the Constitution having legislated as to what judges should be disqualified from receiving votes for other state offices while acting as judges, the Legislature could not thereafter by statute provide otherwise as to the disqualification of judges; that probate judges and other judges in existence at the time of the constitutional amendment, not being disqualified by such constitutional provision, were by clear implication held by the Constitution makers as qualified to receive such votes for other state offices, though they were at the time serving and acting as judges. In short, this court held unanimously that the express disqualification of certain classes of judges *348 was no stronger than the implied qualification of all other classes of judges, and that the General Assembly of Ohio might not invade either field.
This same doctrine was announced and adhered to in City of Elyria v. Vandemark, 100 Ohio St., 365, 126 N. E., 314, touching the classification of cities, particularly the city of Elyria. Part of the syllabus reads:
“The Constitution of the-state having classified municipalities on a basis of population, the Legislature is without authority to make further classification thereof for the purpose of legislation affecting municipal government.”
This decision was likewise concurred in by a unanimous court.
It is claimed that this proceeding in disbarment, as it is professionally known, is a creature of the state, enacted by the General Assembly, and that the General Assembly may provide any method of procedure for hearing and determination of the question involved, which in the judgment of the General Assembly shall be appropriate to the end sought. But, while a special proceeding in disbarment is regulated by statutory enactment, such regulation must comply with the constitutional delegation of power to the several courts.
The jurisdiction of the court of common pleas is, under the present Constitution, and was prior thereto, subject at all times to regulation by the General Assembly. The same was true prior to 1912 in regard to the circuit court, now the Court of Appeals. But this special proceeding in disbarment can have no higher standing than any other special proceeding created by statute.
*349 There are a vast variety of proceedings, ex parte and adversary, created by statute, reviewable or appealable to the probate court or the court of common pleas, or perchance to other inferior courts, all of which, if the General Assembly’s will were to control as against the Constitution, could be brought for new trial or hearing on appeal in the Court of Appeals-. Any person who had been denied the privilege of exercising some professional or occupational right or pursuit, such as a dentist, a pharmacist, a physician or surgeon, as much so as any lawyer, might bring the judgment of the tribunal trying the cause or complaint against him to the Court of Appeals on appeal merely because the General Assembly had so provided by statute. Obviously this would make the constitutional jurisdiction of the Court of Appeals a mere nullity, a mere plaything of the Legislature, which might amend it or repeal it at will.
It is urged, however, that courts have an inherent right to disbar or suspend attorneys at law from the practice of their profession, and that therefore they are in a measure an exception to the general rule as to other licensed persons. We do not understand that when the Legislature confers a right upon a citizen of Ohio any court has an inherent right to arbitrarily, or for any cause other than that enumerated in a statute, deprive such person of such right, even though he be an attorney at law who is a quasi member of the court. Courts always have had and must have the power to hear and determine contempts of court, and to find persons, even attorneys at law, guilty of such contempt, and they may impose penalties that are at least the equivalent of *350 temporary suspension from the practice; but they may not, as an inherent right, disbar any attorney at law, when that right has been conferred by a statute. Attorneys at law are, and should be, governed by the same constitutional provisions touching the jurisdiction of courts as are other persons and professions. They are entitled to the equal protection of the law, but no more.
In revising the judicial article of the Constitution it is quite obvious that the constitutional convention was determined upon a simplification and shortening of judicial procedure, to the end that substantial justice should be administered without denial or delay. The debates unquestionably show that the convention stood for “one trial” and “one review.” It realized what every lawyer and many laymen know, that a second trial in a Court of Appeals usually involves much time, delay, labor, and expense, with substantially no change in the evidence. That would be particularly true in ditch cases, road cases, school questions, and many other special proceedings heard at length in a court of common pleas without jury. If all these cases could be tried de novo in the Court of Appeals merely because some statute so provided, great delay and expense would be involved, not only to the parties, but to the public.
The original form of this amendment did not include the language here especially involved, to-wit, “and appellate jurisdiction in the trial of chancery cases;” the purpose evidently being that all cases heard in the Court of Appeals should be upon petition in error and on the record of the evidence and proceedings below. Finally, however, after much *351 discussion and the most careful consideration, and after many days of review, the convention added, by way of amendment to the original form of the article touching appellate jurisdiction, the words, “in the trial of chancery cases.” The purpose of this inserted amendment is very plain and palpable. Up to that time it is quite evident that the appellate jurisdiction of the Court of Appeals was wholly confined to proceedings by petition in error; but when the convention added the words, “in the trial of chancery cases,” it clearly and convincingly meant that there should be no other than chancery cases tried de novo in the Court of Appeals.

Judgment affirmed.

Marshall, C. J., Jones, Matthias, Day and Allen, JJ., concur.